**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 19-30768-EDK |
| LEROY R. CLINK | ) | |
| TERRY R. CLINK, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| DAVID W. OSTRANDER, | ) | Adversary Proceeding |
| CHAPTER 7 TRUSTEE, | ) | No. 21-03007 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICIA M. HEBERT, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION**

Before the Court is a motion to dismiss (the "Motion to Dismiss") an adversary proceeding filed by the Chapter 7 trustee, David W. Ostrander (the "Trustee"), in the bankruptcy case of Leroy R. Clink and Terry R. Clink (the "Debtors") against Patricia M. Hebert ("Hebert"). In the complaint, the Trustee alleges that certain payments made to Hebert by the Debtors via credit card transactions constitute fraudulent transfers that the Trustee may avoid and recover for the benefit of the bankruptcy estate. Because the Court concludes that the complaint contains sufficient allegations to state a plausible claim, the Motion to Dismiss will be denied.

1

I.      FACTS AND POSITIONS OF THE PARTIES

The following recitation of facts is taken from the allegations in the complaint, matters of record in the underlying bankruptcy case, documents referenced in and attached to the complaint, and other matters of which the Court may take judicial notice.[1]

The Debtors filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code")[2] on September 26, 2019 (the "Petition Date") and indicated in their Statement of Financial Affairs that within 2 years prior to the Petition Date they paid Hebert for legal services provided to the Debtors' daughter in connection with the daughter's divorce. The Trustee determined that from October 2017 through July 2018, the Debtors made ten payments to Hebert, totaling $62,860.46, by either charging the payments directly to the Debtors' credit card accounts or by using convenience checks to draw on the credit card accounts. On April 29, 2021, the Trustee filed the instant adversary proceeding against Hebert asserting that the payments to Hebert are recoverable as fraudulent transfers, as the payments were made within 2 years of the Petition Date, the Debtors did not receive reasonably equivalent value for the transfers, and at the time the payments were made, the Debtors were insolvent or were rendered insolvent and had either the intent to incur, belief they would incur, or should have reasonably believed they would incur debts beyond their ability to pay as the debts came due.[3] Specifically,

---

[1] While a court generally may not consider documents that are extrinsic to the complaint in ruling on a motion to dismiss, there are exceptions "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001) (quoting *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993)).

[2] *See* 11 U.S.C. §§ 101 *et seq.* All statutory references are to provisions of the Bankruptcy Code unless otherwise stated.

[3] The Trustee also asserts that the Debtors owed one creditor (who has filed 4 proofs of claim totaling more than $74,000.00) approximately $12,128 at the time the first payment to Hebert was made.

the Trustee asserts that the payments to Hebert constitute fraudulent transfers that the Trustee may avoid under § 544(b) pursuant to Mass. Gen. Laws ch. 109A, §§ 5(a)(2), 5(a)(8), 6(a), and 8 (Counts I and II) and under § 548(a)(1)(B) (Count III), which avoided transfers the Trustee can recover and preserve for the benefit of the bankruptcy estate under §§ 550 and 551.

Requesting dismissal of the adversary proceeding, Hebert argues that the Trustee cannot avoid the payments because they were neither made by the Debtors nor with funds that the Debtors had a property interest in. First, Hebert asserts that the credit card issuers made the payments and not the Debtors themselves. Therefore, Hebert says, the Debtors were not the "transferors" of the payments. Hebert further argues that the payments cannot constitute fraudulent transfers because the Debtors did not transfer any of the Debtors' property that otherwise would have become property of the bankruptcy estate as contemplated by the Bankruptcy Code or state law.[4]

II. DISCUSSION

To decide a motion to dismiss for failure to state a claim for relief under Fed. R. Civ. Proc. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b), the Court must accept the averments in the complaint as true and determine whether those alleged facts are sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).[5] To assess plausibility, the Court must consider whether "the complaint warrant[s]

---

[4] Based on the issues raised and arguments made by Hebert in Hebert's Brief Supporting Dismissal and at the hearing on the Motion to Dismiss, the Court will consider Hebert to have conceded the Trustee's ability to establish the other required elements of a fraudulent transfer for purposes of the Motion to Dismiss.

[5] Although the Motion to Dismiss does not contain a specific reference to Rule 12(b)(6), Hebert acknowledges in a brief supporting the motion that Rule 12(b)(6) is the applicable legal standard.

dismissal because it failed in toto to render plaintiff's entitlement to relief plausible." *Rodriguez-Reyes vs. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 569 n.14 (2007)).

### A. Transfers

Allowing the recovery of fraudulent transfers protects creditors from prepetition transactions undertaken by the debtor which deplete the pool of assets available to satisfy creditors' claims. *DeGiacomo v. Sacred Heart Univ. Inc. (In re Palladino)*, 942 F.3d 55, 58 (1st Cir. 2019) (citing 5 Collier on Bankruptcy ¶ 548.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017)). To that end, both §§ 544(b)(1) and 548(a)(1)(B) require that the payments to Hebert constituted *transfers of the Debtors' interest in property* in order to be recoverable by the Trustee.

There is no dispute that the payments to Hebert were made by charges to or convenience checks from the Debtors' credit card accounts. Hebert argues that because the credit card issuers transferred the funds, the payments were not made by the Debtors. The Trustee counters that the Debtors' credit card issuers did not independently decide to pay Hebert; instead, the Debtors made the payments by taking affirmative action to incur debt on the Debtors' credit cards via charges and/or convenience checks made out to Hebert.

Notably, in specifying that a trustee may avoid *any transfer* of property of the debtor, the plain language of both §§ 544(b)(1) and 548(a)(1)(B) does not limit the Trustee's avoidance powers to transfers where the Debtors act as the "transferors." And § 101(54) of the Bankruptcy Code broadly defines "transfer" to include indirect, absolute, or conditional modes of parting with property or an interest in property. 11 U.S.C. § 101(54). Neither party disputes that the Debtors made a request to their credit card issuers to borrow funds with a direction to forward those funds to Hebert.

4

Since "transfer" includes indirect modes of disposition and neither §§ 544(b)(1) nor 548(a)(1)(B) limit the Trustee's avoidance power to transfers made by a debtor, the Court finds Hebert's focus on the transferor to be misplaced. As the Trustee asserts, and Hebert does not dispute, the Debtors' credit card issuers forwarded funds to Hebert solely because the Debtors directed them to do so. The Debtors exercised control over disbursement and thereby utilized an indirect mode to voluntarily part with funds borrowed from their credit card issuers when they requested to incur debt and directed that the borrowed funds be provided to Hebert.

### B. Interest of the Debtor in Property

The question remains, however, as to whether the payments to Hebert constituted transfers of the *Debtors' interest in property*. An "interest of the debtor in property" is not defined in the Bankruptcy Code. The Supreme Court has found that the phrase "an interest of the debtor in property," for purposes of avoidance actions, is coterminous with "property of the estate" as defined by § 541(a)(1), "which includes all legal or equitable interests of the debtor in property as of the commencement of the case" wherever located and by whomever held. *Begier v. Internal Revenue Service*, 496 U.S. 53, 58 and n. 3 (1990). A debtor's property interests as of the date of a transfer are determined by state law. *Butner v. United States*, 440 U.S. 48, 54 (1979). However, while state law creates underlying property interests, federal bankruptcy law determines the extent to which a property interest is property of the bankruptcy estate. *In re TelexFree, LLC*, 941 F.3d 576, 584 (1st Cir. 2019) (citing *Butner,* 440 U.S. at 55); *Rine v. Rine Auctioneers Inc. v. Douglas Cty. Bank & Tr. Co. (In re Rine & Rine Auctioneers, Inc.),* 74 F.3d 854, 857-58 (8th Cir. 1996)).

Property interests are created, and their extent is defined, "by existing rules or understandings that stem from an independent source such as state laws." *Haverhill Manor, Inc. v. Comm'r of Pub. Welfare*, 368 Mass. 15, 23 (1975) (quoting *Regents of State Colls. v. Roth*, 408

5

U.S. 564, 577 (1972)). While the Court has not discerned, and neither party has cited to, any Massachusetts authority specifically addressing whether a debtor has a property interest in funds borrowed from a credit card issuer who forwards those funds directly to a third party at the debtor's direction, "property" is broadly defined as "anything that may be subject to ownership" for purposes of the Massachusetts Uniform Fraudulent Transfer Act, M.G.L. ch. 109A, § 2. Generally, in determining whether a transfer constitutes a transfer of "an interest of the debtor in property," most courts have applied a dominion/control test, which the Trustee asks the Court to apply here. *See Parks v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251 (10th Cir. 2008). Pursuant to the dominion/control test, "a transfer of property will be of 'an interest of the debtor in property' if the debtor exercised dominion or control over the transferred property." *Id*. at 1255.

Hebert, relying on the First Circuit's focus in *Palladino* on the purpose behind fraudulent transfer laws – to protect creditors from a debtor's prepetition transactions that deplete the pool of assets later available to satisfy creditors' claims – implores this Court to apply a "diminution of estate" test. *See Palladino*, 942 F.3d at 58. Pursuant to the diminution of estate test, "a debtor's transfer of property constitutes a transfer of 'an interest of the debtor in property' if it deprives the bankruptcy estate of resources which would otherwise have been used to satisfy the claims of creditors." *Marshall*, 550 F.3d at 1256. According to Hebert, the funds borrowed and transferred directly from the credit card issuers to Hebert could not be reached or collected by any creditor and would not have been available to pay creditors' claims in this bankruptcy case. Therefore, Hebert argues, there was no diminution of the Debtor's estate and the payments to Hebert were not fraudulent transfers.

As discussed in *Marshall*, the majority view is that when a debtor transforms an offer of credit into loan proceeds disbursed to pay another creditor at the debtor's direction, the debtor

exercises control of the funds and deprives the bankruptcy estate of those funds despite never having possession thereof.  *Marshall*, 550 F.3d at 1256 (citing *Meoli v. MBNA Am. Bank, N.A. (In re Wells)*, 382 B.R 355 (B.A.P. 6th Cir. 2008); *Mukamal v. Bank of Am. (In re Egidi)*, 386 B.R. 884 (Bankr. S.D. Fla. 2008); *Yoppolo v. Greenwood Trust (In re Spitler)*, 213 B.R. 995 (Bankr. N.D. Ohio 1997)).  In *Marshall*, the Tenth Circuit, deciding that the debtors had exercised dominion or control over the funds at issue (funds borrowed from one credit card account to pay the balance on another account), stated that the transaction was "essentially the same as if [the] debtors had drawn on their [existing] line of credit, deposited the proceeds into an account within their control, and then wrote a check," holding that "[i]n both scenarios, debtors obtained an interest in the loan proceeds even if the interest was only fleeting."  550 F.3d at 1256-57.  And, even in applying the diminution of the estate test, the *Marshall* court held that the proceeds from the line of credit "were an asset of the estate for at least an instant" before they were transferred "(perhaps only a nanosecond) later."  *Id.* at 1258 and n.6.  While acknowledging the net zero effect on the estate due to the accrual of additional debt, the *Marshall* court equated the ability to control disbursement of the proceeds to physical control of the proceeds and found that a balance transfer between credit cards constituted a transfer of "an interest of the debtor in property" that deprived the estate of those funds.

Hebert argues that the Tenth Circuit, in *Walters v. Stevens, Littman, Biddison, Tharp & Weinberg, LLC (In re Wagenknecht)*, 971 F.3d 1209 (10th Cir. 2020), subsequently disavowed its *Marshall* decision in favor of applying the diminution of estate test to determine whether prepetition payment of the debtor's legal fees by the debtor's mother with the mother's funds, which the mother considered a loan to debtor, was a preferential transfer. Based on the mother's attestation that she agreed to make the loan to the debtor for the sole purpose of paying the legal

7

fees and would not have made the loan for any other purpose, the Court found that the debtor did not exercise control or dominion over the proceeds since the debtor had no ability to direct their distribution. *Id.* at 1214. Because the funds never passed to the debtor or through the debtor's account and the debtor had no role in delivering the funds to the recipient, the Court held that the loan proceeds would not have been available to satisfy creditors' claims and therefore "the policy behind the avoidance power is not implicated." *Id*. (quoting *Begier*, 496 U.S. at 58). Rather than reject the dominion/control test, the Court in *Wagenknecht* first considered the debtor's inability to control distribution of the loan proceeds and seemingly applied both tests to determine an interest of the debtor in property was not transferred by the debtor's mother's payment. *Id* at 1215. The facts in this case are readily distinguishable from *Wagenknecht* since no party has alleged that the credit card issuers conditioned approval of the Debtors' requested transactions on the identity of the intended recipient.

In some situations, § 541(a) incorporates "property in which the debtor did not have a possessory interest." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 (1983). The First Circuit has held that "[w]hen determining whether certain funds are considered 'an interest of the debtor in property,' the ability of the debtor to exercise control over the property can be determinative." *Riley v. Nat'l Lumber Co. (In re Reale)*, 584 F.3d 27, 31 (1st Cir. 2009) (citations omitted); *see also Howison v. Milo Enters., Inc. (In re Freaky Bean Coffee Co.)*, 494 B.R. 771, 781-782 (1st Cir. 2013) (considering debtor's lack of exercise of control to determine that debtor did not have an interest in the funds at issue while noting that other courts have applied a diminution of the estate test). "[T]he ability to exercise control over the property is sufficient to establish ownership." *Gray v. Travelers Ins. Co.* (*In re Neponset River Paper Co.*), 231 B.R. 829, 833 (B.A.P. 1st Cir. 1999) (citation omitted); *see also Sigmon v. Royal Cake Co., Inc.* (*In re*

*Cybermech, Inc.*), 13 F.3d 818, 820-821 (4th Cir. 1994) (dominion and control are sufficient to demonstrate an interest in property). The Debtors requested loan proceeds from their credit card issuers and directed that the proceeds be disbursed to Hebert. Hebert does not allege that the credit card issuers could have stopped a transaction or payment or could have redirected the loan proceeds. The Debtors' exercise of control over the disbursement of the credit card proceeds created an interest of the Debtors in the proceeds that the Debtors transferred to Hebert.

This Court agrees with the majority view, as represented by the *Marshall* decision, that the Debtors' ability to exercise control over the credit card convenience check proceeds by directing their disbursement is determinative in this case of whether an interest of the Debtors in property was transferred to Hebert.

III.    CONCLUSION

For the foregoing reasons, the Court rules that the Trustee, in the complaint, has stated a plausible claim that within 2 years prior to the Petition Date, the Debtors transferred an interest of the Debtors in property to Hebert. The veracity of the Trustee's allegations, the value that the Debtors received in exchange for the payments to Hebert, and the Debtors' financial circumstances as of the time of each transfer are factual issues reserved for another day. Accordingly, the Court will deny the Motion to Dismiss. A separate order in conformity with this Memorandum will issue forthwith.

By the Court

Dated: September 30, 2022

Elizabeth D. Katz
United States Bankruptcy Judge

9